# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FELIX FERNANDO MARTINEZ RICO** | **CIVIL ACTION** |
| **VERSUS** | |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.** | **NO. 25-00990-BAJ-RLB** |

## RULING AND ORDER

Before the Court is Petitioner Felix Fernando Martinez Rico's **Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Doc. 1).** [1] Martinez Rico is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the ICE Processing Center in Pine Prairie, Louisiana.[2] (Doc. 26 at 1).

Respondents filed a Response to the Petition. (Doc. 7). In accordance with the Court's Standing Order, Respondents filed Petitioner's A-File into the record as well as Notices to the Court regarding Martinez Rico's current location. [3] (Doc. 7; Doc. 16–Doc. 16-9; Doc. 26; Doc. 27).

---

[1] Petitioner was *pro se* at the time of filing the Petition but is now represented by the Office of the Federal Public Defender. (Doc. 14, Amended Standing Order; Doc. 32, Order Granting Motion to Enroll).

[2] The Pine Prairie facility is located within the U.S. District Court for the Western District of Louisiana. At the time the Petition was filed, Martinez Rico was detained at the Louisiana ICE Processing Center at the Louisiana State Penitentiary ("LSP"), also known as Angola, located within this Court's jurisdiction. "Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change." *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) (collecting cases).

[3] The "A-File" or "Alien File" is the file for each noncitizen who interacts with ICE.

Martinez Rico filed a Reply Brief in support of his Petition. (Doc. 10). Petitioner's Counsel filed a Supplemental Reply in support of the Petition (Doc. 31).

For the following reasons, the Petition will be **GRANTED**.

## I.    BACKGROUND

Martinez Rico is a 63-year-old native of Cuba who has lived in the United States for 57 years. (Doc. 1-1 at 3). On April 29, 1969, when he was 6 years old, Martinez Rico was admitted to the United States as a refugee. On January 11, 1975, Martinez Rico became a lawful permanent resident. (Doc. 16 at 29).

In 1999, Martinez Rico was ordered removed following a 1992 conviction for conspiracy to possess and distribute cocaine and for the use of a firearm in connection with the drug charge. (*Id.*). On December 21, 1999, ICE released Martinez Rico on an order of supervision ("OSUP") because ICE was unable to remove him from the United States (the "1999 OSUP"). (Doc. 7-1 at 2).

In 2004, Martinez Rico was convicted of kidnapping and armed sexual battery and sentenced to 20 years in prison. (Doc. 16-3 at 48; Doc. 16-4 at 40). On September 25 and 26, 2019, days before his anticipated October 2, 2019 release from prison, ICE officials internally recommended Martinez Rico's release because there was no "significant likelihood of removal in the reasonably foreseeable future" ("SLRRFF" in ICE parlance). (Doc. 16-4 at 41).

On October 30, 2019, ICE conducted a full review of Martinez Rico's custody status. (Doc. 16-4). In the full custody review, ICE determined that Martinez Rico did

not pose a threat to the public and was not likely to be violent. (*Id.* at 24).[4] Three ICE officers—a Deportation Officer, a Supervisory Detention and Deportation Officer, and an Assistant Field Officer Director—recommended that ICE release Martinez Rico from custody on an OSUP. (*Id.* at 25). Each officer stated that there was no significant likelihood of Martinez Rico's removal to Cuba in the reasonably foreseeable future. (*Id.*). In making their recommendation, ICE officers also relied on Martinez Rico's lack of connections to any other country. (*Id.*). The Assistant Field Office Director emphasized: "Continued detention is not in the public's best interest." (*Id.*). Accordingly, ICE released Martinez Rico on an OSUP on November 5, 2019 (the "2019 OSUP"). (*Id.* at 27).

On July 11, 2025, Martinez Rico was arrested by Border Patrol "for being illegally present in the U.S.," notwithstanding the 2019 OSUP authorizing his supervised release. (Doc. 7-1 ¶ 11). On July 26, 2025, Martinez Rico was transferred to ICE custody, where he has remained for nearly one year. (*Id.* ¶ 12).

On August 27, 2025, ICE served Martinez Rico with a Notice indicating that he would be deported to Mexico. (*Id.* ¶ 13). On November 18, 2025, however, ICE determined that Martinez Rico was ineligible for removal to Mexico. (*Id.*). On November 21, 2025, ICE determined that Cuba again denied repatriation to Martinez Rico. (*Id.*). Approximately eight months have passed since ICE made these

---

[4] *See also* the "Notice to Alien of File Custody Review" dated October 31, 2019, explaining to Petitioner that his custody status will be reviewed and that "[r]elease [] is dependent on [Petitioner's] demonstrating to the satisfaction of the Secretary of Homeland Security that [he] **will not** pose a danger to the community and **will not** present a flight risk." (Doc. 16-4 at 4 (emphasis in original)).

November 2025 determinations, and ICE contends that it is "still working to remove [P]etitioner to a third country." (*Id.* ¶ 14).

In his Petition, Martinez Rico asserts that his detention by ICE has been unlawfully prolonged according to the U.S. Supreme Court's precedent in *Zadvydas v. Davis*, 533 U.S. 687 (2001). (Doc. 1-1). Martinez Rico also argues the following: (1) he has been subject to the 2019 OSUP for years and has complied with all conditions of release (Doc. 1-1 at 3); (2) there is nothing in the record demonstrating a reason for the revocation of his supervised release (Doc. 10 at 3); (3) there is no likelihood of his repatriation to Cuba (Doc. 1-1 at 4); (4) ICE has been unable to remove him since 1999 (Doc. 10 at 1); and (5) there is nothing in the record indicating that ICE will remove him in the foreseeable future (Doc. 10 at 1). Accordingly, Martinez Rico asks the Court to order his release from ICE custody subject to the 2019 OSUP. (Doc. 10 at 3).

Respondents contend that the Court should deny Martinez Rico's Petition as premature, and because Martinez Rico has not met the burden to show that his removal is not reasonably foreseeable. (Doc. 7 at 4, 5). Despite releasing Petitioner in 2019, Respondents now argue, without any new evidence, that Martinez Rico should remain detained because he poses a risk to the community. (*Id.* at 7).

For the following reasons, the Petition will be **GRANTED**.

## II.    DISCUSSION

This Court has explained the applicable law in detail in *Rodriguez Romero v. Ladwig*, ---F.Supp.3d.---, No. 25-1106, 2026 WL 321437 (M.D. La. Feb. 6, 2026), which the Court incorporates by reference herein.

### A.    Petitioner's OSUP was Never Officially Revoked.

It is undisputed that ICE released Martinez Rico on the 2019 OSUP. Once ICE has released a noncitizen on an OSUP because there is no significant likelihood of removal in the reasonably foreseeable future, ICE may revoke the noncitizen's supervised release in the following circumstances: (1) if the noncitizen violates conditions of release; or (2) "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). Here, Respondents do not argue that Martinez Rico violated the conditions of release contained in his 2019 OSUP. (*See generally* Doc. 7). Respondents further fail to identify changed circumstances warranting the revocation of Martinez Rico's 2019 OSUP.

When ICE revokes a noncitizen's OSUP, the noncitizen must "be notified of the reasons for revocation of his or her release" and must be afforded an "initial informal interview promptly after his or her return to Service custody to afford [them] an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i). Here, Respondents failed to provide a Notice of Revocation of Martinez Rico's 2019 OSUP, despite filing his entire A-File into the record as required by the Court. Notably, and conversely, Martinez Rico's A-File contains the Notice of Revocation of his 1999

5

OSUP. (Doc. 16; Doc. 16-4 at 36). With no reference to a Notice of Revocation of the 2019 OSUP in the A-File, the Declaration of ICE Assistant Field Office Director Fruge-Prudhomme, or Respondent's Response Brief, Respondents have provided ***no*** basis for the Court to find that Martinez Rico's OSUP was revoked at all, much less that it was revoked with due process. *Accord Rodriguez Romero*, 2026 WL 321437 at \*7 (finding that the Government cannot meet its burden when it has presented no evidence of formal revocation); *id.* at \*7–8 (discussing petitioners' Notices of Revocation and citing similar declarations by AFOD Fruge-Prudhomme that mention these Notices).

An increasingly overwhelming number of courts faced with improperly revoked OSUPs have found that this deprivation of liberty without due process warrants immediate release from detention. *See id.* at \*9 (collecting cases); *see also Lin v. U.S. Att'y Gen.*, No. 26-656, 2026 WL 1974205, at \*1 (M.D. Fla. July 8, 2026) ("[B]ecause [f]ederal [r]espondents concede that ICE unlawfully revoked [p]etitioner's OSUP, and to date, have provided no evidence to show otherwise, the Court finds [p]etitioner is entitled to immediate release under the conditions of his original OSUP."). As the United States District Court for the Western District of Louisiana emphasized, "There being no documentation of the revocation of [petitioner's] release, who authorized it, or for what reason, the Government clearly fails to carry its burden to show that there was a significant likelihood of [petitioner's] removal justifying his re-detention." *Gittens v. Dep't of Homeland Sec.*, No. 25-1457, 2026 WL 1278555, at

*2 (W.D. La. Apr. 21, 2026), *report and recommendation adopted*, No. 25-1457, 2026 WL 1277592 (W.D. La. May 8, 2026). The same result must issue here.

Respondents' argument that Martinez Rico should not be released because he poses a risk of danger to the community does not persuade otherwise. (Doc. 7 at 7–8). In 2019, ICE determined that Martinez Rico's release was appropriate, which required a finding that Martinez Rico did not pose a threat to the public and was unlikely to be violent. (Doc. 16-4 at 24 (finding that Petitioner does not meet criteria for continued detention)). Respondents have failed to identify any change in circumstances that has occurred in the intervening seven years suggesting that his detention is now warranted. Assuming *arguendo* that such circumstances exist, continued detention remains limited by the Supreme Court's ruling in *Zadvydas v. Davis*, as discussed below.

### B.    Petitioner has Been Detained Beyond the Allowable Period.

In *Zadvydas v. Davis*, the U.S. Supreme Court held that although the Government may need more than the 90-day removal period to effect deportation, the Government may not lawfully detain persons indefinitely. *Zadvydas*, 533 U.S. at 697. Finding that detention for longer than six months is constitutionally suspect, the Court established that a period of up to six months is a presumptively reasonable time to detain persons for the purpose of effectuating removal. *Id*. at 699, 701.

A habeas petition filed before six months of detention has passed is not procedurally barred as premature—"nothing in *Zadvydas* precludes a challenge to detention before the presumptive[ ] . . . period has elapsed." *Rodriguez Romero*,

7

2026 WL 321437 at *13 (quoting *Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025) (citing cases)). At any time, "if removal is not reasonably foreseeable, the court should hold continued detention is unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. In bringing a *Zadvydas* claim of prolonged detention, once a petitioner has shown that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must show evidence sufficient to rebut the petitioner's showing, or else petitioner's detention is unlawful. *Id.* at 701.

Here, Martinez Rico has been in ICE detention for nearly one year with no end in sight. He asserts that his removal is not likely because ICE has been unable to remove him since 1999, and because there is no removal agreement between the U.S. and Cuba. (Doc. 1-1 at 4). Martinez Rico further argues that Respondents' claim of seeking a third country for removal is merely speculative when a specific country has not been identified. (Doc. 10 at 2).

Respondents contend that these facts "do not foreclose removal to a third country[,]" but they fail to identify a third country for Martinez Rico's removal, and further fail to point to any facts showing that his removal is reasonably foreseeable. (Doc. 7 at 6). In fact, ICE's recommendation of release in November 2019 suggests that his lack of ties to any other country makes third-country removal less likely. (Doc. 16-4 at 25 ("Due to a lack of SLRRFF to CUBA, and the absence of ties to an alternative country ICE [] is unable to enforce the removal order at this time.")).

8

Respondents have not provided any evidence indicating that a third country removal is more likely now than it was in 2019.

The evidence before the Court shows that in November 2025, ICE determined that Martinez Rico was ineligible for removal to Mexico and confirmed once again that Martinez Rico was ineligible for removal to Cuba. (Doc. 7-1 ¶ 13). Nearly one year has passed since ICE detained Martinez Rico, and eight months have passed since ICE determined that Martinez Rico could not be removed to Mexico or Cuba. Yet, ICE has made no meaningful progress in removing Martinez Rico.[5] (*Id.* ¶ 14 (ICE Assistant Field Office Director attesting, "In the meantime, [ICE] is still working to remove the petitioner to a third country.")). Accordingly, his indefinite detention is unlawful.

## III. CONCLUSION

Because ICE revoked Petitioner Martinez Rico's 2019 OSUP without due process and because his continued detention is unlawful, Petitioner's immediate release from detention is warranted.

Accordingly,

---

[5] Respondents argue that "ICE has taken multiple steps to attempt to remove the [P]etitioner from the United States." (Doc. 7 at 6). But *Zadvydas* does not credit repeated failed attempts that leave a person unreasonably detained. There, the Supreme Court found that the United States Court of Appeals for the Fifth Circuit's holding that "continued detention [was] lawful as long as 'good faith efforts to effectuate . . . deportation continue'" would require a noncitizen to show that removal is impossible—"which demands more than [the Court's] reading of the statute can bear." *Zadvydas*, 533 U.S. at 702.

**IT IS ORDERED** that Petitioner Felix Fernando Martinez Rico's **Petition for Writ of Habeas Corpus (Doc. 1)** is **GRANTED**. Respondents shall release Petitioner within 24 hours of the issuance of this Order, subject to his 2019 OSUP.

**IT IS FURTHER ORDERED** that Respondents shall, at least 3 hours prior to Martinez Rico's release, notify Petitioner's Counsel of the time and place of his release in order to facilitate travel.

**IT IS FURTHER ORDERED** that Respondents shall not re-detain Petitioner without due process of law, in accordance with this Ruling and Order.

Baton Rouge, Louisiana, this 16th day of July, 2026

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

10